PAUL E. MERRILL *vs.* KIRKLAND CONSTRUCTION CO., INC.

Middlesex.    February 7, 1974. — April 12, 1974.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Practice, Civil,* Appellate Division: what question open, appeal.  *Contract,* What constitutes, Parties, Consideration.  *Frauds, Statute of.*

Evidence that a carrier insisted on payment by a contractor for delivery charges as a condition of delivering materials to a subcontractor; that the carrier so informed the subcontractor who so informed the contractor; that the contractor desired to induce the carrier to deliver the materials and promised payment in a conversation with the subcontractor; and that the subcontractor communicated the promise to the carrier was sufficient to warrant a finding that the contractor was "contractually" and "statutorily" liable to the carrier for delivery charges made after the promise. [111-114]

A completed oral contract does not fail because one party does not respond to the other's request for written confirmation. [114]

There was consideration for an oral promise to a carrier by a contractor to pay delivery charges on materials shipped by the carrier to a subcontractor. [114]

That a contractor, which promised a carrier to pay delivery charges on materials shipped to a subcontractor, had paid the subcontractor the full subcontract price was not shown and was not relevant to the contractor's obligation to the carrier. [114]

A direct contractual relationship was created between a contractor, which promised in a conversation with its subcontractor to pay delivery charges on materials shipped to the subcontractor by a carrier, and the carrier, who had insisted on assurance of payment by the contractor as a condition of delivery. [114-115]

A judge was warranted in finding that an oral promise by a contractor to pay delivery charges on material shipped by a carrier to a subcontractor was an "original" undertaking and not unenforceable under G. L. c. 259, § 1, as a promise to pay the debt of another. [115]

CONTRACT. Writ in the Third District Court of Eastern Middlesex dated August 5, 1971.

The action was heard by *Doyle*, J.
*Julius Thannhauser* for the plaintiff.
*Michael J. Lack* for the defendant.

BRAUCHER, J.   A New Hampshire subcontractor contracts to supply, deliver, and install goods at a job site in Boston. A carrier refuses to transport the goods for the subcontractor's account and insists on shipment on a "collect basis to the consignee." The prime contractor orally agrees with the subcontractor to accept collect charges, the subcontractor so informs the carrier, and the carrier then transports the goods, naming the prime contractor as consignee in the bills of lading. This appeal raises the question whether the carrier may recover on the oral agreement. We hold that he may.

The plaintiff Merrill brought this action of contract in a District Court to recover for services rendered to the defendant Kirkland Construction Co., Inc. (Kirkland). The judge found for the plaintiff in the sum of $5,217.80, and the defendant claimed a report to the Appellate Division. The Appellate Division vacated the finding and ordered judgment for the defendant, and the plaintiff appealed. G. L. c. 231, § 109. We reverse, and remand for further proceedings.

We summarize the evidence reported to the Appellate Division. Kirkland was engaged as a contractor in the construction of the "flower market" in Boston under a contract dated in January, 1969. In February, 1969, Kirkland made a subcontract with Structural Concrete Corporation (SCC) of New Hampshire for the supply, delivery, and installation of precast concrete beams at the job site in Boston for $80,500. Between August 7 and August 27, 1969, Merrill, an interstate motor carrier, delivered the beams from SCC's place of business in Maine to Kirkland in Boston. The shipments were pursuant to bills of lading which designated SCC as shipper, Kirkland as consignee, and Merrill as carrier. Deliveries were made at the job site to a representative of SCC "pursuant to the bills of lading."

In January, 1969, Merrill had advised SCC that he would no longer accept SCC's credit. He declined to transport products for SCC's account and accepted shipments only on a "collect basis to the consignee." On or about August 11, 1969, SCC's comptroller telephoned Kirkland and discussed the freight charges with Kirkland's vice-president, informing him that if he wanted his product he would have to "accept collect charges." Kirkland's vice-president answered, "Yes," and it was agreed that Kirkland would pay the freight charges by drawing checks payable to SCC and Merrill jointly and that SCC would give Kirkland credit for the payments against the subcontract price. SCC confirmed the agreement by a letter of August 14, 1969. On August 18, 1969, Merrill wrote Kirkland a confirming letter requesting acknowledgment; Kirkland received the letter on August 20, 1969, but did not acknowledge it.

The fair value of the freight charges pursuant to tariff regulations of the Interstate Commerce Commission was $5,217.80. On August 28, 1969, SCC filed a petition in bankruptcy. In September, 1969, the receiver for SCC, with SCC's comptroller present, told the Kirkland vice-president that Kirkland would have to pay Merrill directly. In October, 1969, the receiver sent Kirkland a letter to the same effect.

The judge denied three of Kirkland's requests for rulings: "1. There is insufficient evidence to warrant a finding for the plaintiff. . . . 6. The evidence shows that the defendant never had an agreement with the plaintiff. 7. If there was never any agreement by the defendant to pay the plaintiff then the plaintiff may not recover, irrespective of any provision of federal law." He found Kirkland "statutorily liable" for the freight charges under 49 U. S. C. § 323 (1964) on "an agreement implied in law," and also "contractually liable on the same obligation . . . in quantum meruit." The Appellate Division was of the opinion that the denial of the three requests quoted was error.

1. The report raised the question whether the reported evidence was sufficient to warrant the judge's finding that

there was an agreement between Merrill and Kirkland, in the face of evidence that the only direct contact between them, oral or written, was Merrill's unanswered letter to Kirkland dated August 18, 1969. The Appellate Division said, "There was no finding by the trial judge of any agency or anything in the report to indicate that Structural was an agent at any time of either the plaintiff or the defendant. Nor did any consideration run from Merrill to Kirkland to support Kirkland's promise. . . . We thus find no express contract between the parties, nor a contract implied in fact."

We think the Appellate Division impermissibly invaded the fact-finding province of the judge. See *Heil* v. *McCann,* 360 Mass. 507, 511 (1971). The effect of the finding that Kirkland was "contractually liable" to Merrill, as well as "statutorily liable," is that there was an agreement between Kirkland and Merrill. It cannot be said that this finding was unsupported by the evidence. Compare *Butler* v. *Cromartie,* 339 Mass. 4, 6 (1959).

There was evidence that Merrill insisted on assurance of payment by Kirkland as a condition of rendering transportation services, that Merrill so informed SCC and SCC so informed Kirkland, that Kirkland desired to induce Merrill to render the services, and that Kirkland therefore made the requested promise in a telephone conversation with a representative of SCC. Such a promise would have the desired effect only if communicated to Merrill. There was evidence that it was so communicated, and the judge could infer that Kirkland contemplated such communication and authorized SCC to make it. *Rome* v. *Gaunt,* 246 Mass. 82, 93-94 (1923). If so, there was in effect an offer by Kirkland to Merrill which was accepted by Merrill each time it provided transportation services. *Johnson-Foster Co.* v. *D'Amore Constr. Co.* 314 Mass. 416, 420-421 (1943). *Edmund Wright Ginsberg Corp.* v. *C. D. Kepner Leather Co.* 317 Mass. 581, 585 (1945). See *Flint* v. *Pierce,* 99 Mass. 68, 71 (1868); *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437, 442 (1893); *National Shawmut Bank* v. *John-*

*son*, 317 Mass. 485, 489 (1945); *LaChance* v. *Rigoli*, 325 Mass. 425, 427 (1950); *Morse Bros. Elec. Co., Inc.* v. *Martin Shore Realty Co. Inc.* 344 Mass. 81, 84-85 (1962).

The judge allowed recovery for all the shipments carried by Merrill. Merrill now claims only that, on a proper reading of Kirkland's promise, he can recover for those shipments made after he received notice of the promise. We therefore do not consider the effect of a promise to pay for both past and future shipments. The record does not disclose the amount recoverable on the plaintiff's theory, and the case must be remanded for determination of that amount.

Certain subsidiary contentions of Kirkland lack substance. Once an oral contract is made, it does not fail because one party fails to respond to the other's request for written confirmation. *Kilham* v. *O'Connell*, 315 Mass. 721, 724-725 (1944). There was no lack of consideration. *Graphic Arts Finishers, Inc.* v. *Boston Redevelopment Authy.* 357 Mass. 40, 42-43 (1970). Kirkland's contention that it "presumably paid" SCC the full subcontract price is not supported by the record; the subcontract provided for retention of ten per cent until final acceptance. If SCC was overpaid and that fact was somehow material to Merrill's rights, Kirkland made no such showing.

2. The Appellate Division relied on a "general rule" that "a person who is not a party to a simple contract, and from whom no consideration moves, cannot sue on the contract, and consequently that a promise made by one person to another for the benefit of a third person who is a stranger to the consideration will not support an action by the latter." See *Mellen* v. *Whipple*, 1 Gray 317, 321 (1854); *Exchange Bank* v. *Rice*, 107 Mass. 37, 41 (1871); *New England Structural Co.* v. *James Russell Boiler Works Co.* 231 Mass. 274, 279-280 (1918). That doctrine has no application if it is found that there was a direct contractual relation between the plaintiff and the defendant. *Johnson-Foster Co.* v. *D'Amore Constr. Co.* 314 Mass. 416, 422 (1943). Compare *Crompton* v. *Lumbermens Mut. Cas. Co.* 333 Mass. 160, 163-165 (1955). Kirkland's promise was addressed to Mer-

rill, and Merrill was therefore a promisee rather than a beneficiary. See Restatement 2d: Contracts (Tent. drafts Nos. 1-7, 1973) § 2, comment g; Restatement: Contracts, Massachusetts Annotations, c. 6 (1935). We therefore do not consider what bearing the doctrine would have if there were no direct contractual relation. See *Boston & Maine R.R.* v. *Construction Mach. Corp.* 346 Mass. 513, 521, n. 5 (1963), and authorities cited; Bernhard, Third Party Beneficiary Rights in Massachusetts, 49 Mass. L. Q. 159 (1964); Restatement 2d: Contracts (Tent. drafts Nos. 1-7, 1973), c. 6, Introductory Note.

3. The Appellate Division held that Kirkland's oral promise was unenforceable under the statute of frauds as a promise to answer for the debt of another. G. L. c. 259, § 1, Second. We think, however, that the reported evidence warranted a finding that Merrill gave credit to Kirkland and not to SCC. The statute of frauds does not bar enforcement of such an "original" undertaking, as distinguished from a "collateral" promise. See, e.g., *Stone* v. *Walker*, 13 Gray 613, 615-617 (1859); *Irving Tanning Co.* v. *Shir*, 295 Mass. 380, 382-383 (1936); *Schultz* v. *Frary*, 329 Mass. 481, 482 (1952). At least as to services rendered after the promise and in reliance on it, it is of no consequence that delivery may have been made to SCC. See *Hammond Coal Co. Inc.* v. *Lewis*, 248 Mass. 499, 501 (1924); *Seder* v. *Kozlowski*, 304 Mass. 367, 370 (1939); Restatement 2d: Contracts (Tent. drafts Nos. 1-7, 1973) §§ 180, 181. Alternatively, it could have been found that the real object of the transaction was the obtaining of a pecuniary benefit to the promisor, and that satisfaction of any obligation of SCC was merely incidental. *Hayes* v. *Guy*, 348 Mass. 754, 756-757 (1965), and cases cited. See Restatement 2d: Contracts (Tent. drafts Nos. 1-7, 1973), § 184, and illustration 3.

4. Merrill does not now argue that there was error with respect to the ruling of the Appellate Division that Kirkland was not subject to liability under 49 U. S. C. § 323 (1964). We therefore do not consider the point.

5. The decision and order of the Appellate Division are

reversed. The case is to be remanded to the District Court, with directions to determine the amount of the plaintiff's charges for services rendered after he received notice of the defendant's promise, and to enter judgment for the plaintiff for that amount plus interest.

*So ordered.*